UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
SEP 19 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

      v.

TITUS THOMPSON,

          Defendant.

**DECISION AND ORDER**

1:18-CR-00126 EAW

## I.    <u>INTRODUCTION</u>

Before the Court are objections filed by defendant Titus Thompson ("Defendant") (Dkt. 99) to a Report, Recommendation and Order (Dkt. 92), recommending denial of Defendant's motion to suppress physical evidence seized upon execution of a search warrant on or about May 18, 2018, at a two-family residence located at 89 Parkridge Avenue in Buffalo, New York. For the reasons set forth below, the Court will accept the untimely arguments and affidavit submitted on behalf of Defendant. Considering the untimely submissions, the Court concludes that Defendant has failed to meet the standard for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). However, because outstanding issues remain as set forth herein, the Court continues to reserve decision on the motion to suppress and sets a status conference for September 25, 2019, at 12:45 PM, at the United States Courthouse in Buffalo, New York.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant stands accused by way of a Superseding Indictment returned on October 11, 2018, with the following five counts: (1) conspiracy to commit firearms offenses in violation of 18 U.S.C. § 371; (2) unlawfully dealing in firearms in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D); (3) felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (4) using and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1); and (5) possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(a)(i).   (Dkt. 31).   The Superseding Indictment charged a total of ten defendants.[1]   The undersigned referred all pretrial matters in the case to United States Magistrate Judge H. Kenneth Schroeder, Jr., pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Dkt. 4).

According to a minute entry from the arraignment of Defendant on the Superseding Indictment before Judge Schroeder on October 17, 2018, Defendant's counsel advised that he did not intend to file any pretrial motions other than a motion for severance.   Judge Schroeder issued a pretrial scheduling order for all defendants on October 24, 2018, setting December 14, 2018, as the deadline to file pretrial motions.  (Dkt. 39).  An Amended Scheduling Order was issued for all defendants on December 11, 2018, adjourning the deadline to file pretrial motions to January 18, 2019. (Dkt. 49).

---

[1]    The original indictment, returned on June 14, 2018, named only Defendant and contained only one count—felon in possession of firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Dkt. 2).

Despite the representations at the arraignment before Judge Schroeder, on January 18, 2019, Defendant filed omnibus pretrial motions. (Dkt. 64). Among the relief identified by Defendant was suppression of evidence seized pursuant to the execution of a search warrant on or about May 18, 2018, at 89 Parkridge Avenue, Buffalo, New York. (*Id.* at 1). However, Defendant simply made the following conclusory statement: "defendant Titus Thompson respectfully reserves his right to challenge the search warrant, the veracity of its confidential informant and the execution thereof at a later date."[2] (*Id.* at 3). Defendant specifically did not seek a severance. (*Id.* at 40).

At the request of other defendants, Judge Schroeder issued an Amended Scheduling Order extending the deadline to file pretrial motions to February 15, 2019. (Dkt. 66). The Government filed its response to Defendant's omnibus pretrial motions on March 1, 2019. (Dkt. 75).

Oral argument was held before Judge Schroeder on March 12, 2019, and Defendant's omnibus motions were granted in part and denied in part. (*See* Minute Entry 3/12/2019; Dkt. 112-1 at 18-27[3]). With respect to the suppression motion, Judge Schroeder indicated that he would give Defendant until March 12, 2019, to file an affidavit "fully setting forth the basis for which the suppression should be granted or for the holding of a hearing. . . ." (Dkt. 112-1 at 62). Defense counsel responded that "after consultation with

---

[2]     Defendant made the same perfunctory statement in his original pretrial motions filed when the initial indictment was pending. (Dkt. 8 at 3).

[3]     Docket 112-1 is the transcript from the appearance before Judge Schroeder on March 12, 2019, and the page number references herein are to the pagination generated through CM/ECF (not the transcript pagination).

my client, Mr. Thompson, I don't think we will be filing an affidavit." (*Id.*). No affidavit was forthcoming, and consistent with Judge Schroeder's statement at the appearance on March 12, 2019, he issued a Report, Recommendation and Order (the "R&R") concluding that because no affidavit of standing was filed by Defendant, he was not entitled to an evidentiary hearing on his suppression motion and therefore it was recommended that this Court deny Defendant's motion to suppress. (Dkt. 92).

On May 30, 2019, Defendant's current counsel was substituted for his prior counsel. (Dkt. 93).

On July 11, 2019, Defendant filed objections to the R&R. (Dkt. 99). Defendant conceded that the objections "assert new facts and arguments not raised to the Magistrate Judge for the reasons explained below and in the attached affidavit of defendant Titus Thompson." (*Id.* at ¶ 2). Defendant submitted for the first time an affidavit which purports to be an affidavit establishing his standing to object to the search of 89 Parkridge Avenue. (Dkt. 99-2). Defendant contends that he fired his prior counsel "because I came to realize they had not reviewed the Government's disclosures in my case and ignored my instructions." (*Id.* at ¶ 4). Defendant claims that he had "instructed" his prior attorneys "to prepare an affidavit of standing" in furtherance of his motion to suppress, and that he "was greatly disappointed and aggrieved" upon learning that the Court-ordered deadline for filing an affidavit of standing was missed. (*Id.*).

Defendant argues in his objections that the search warrant affidavit submitted to New York State Acting Supreme Court Justice John L. Michalski, upon which the search warrant for 89 Parkridge Avenue was issued, contained misrepresentations and omissions.

Specifically, according to Defendant, the affidavit misrepresented to Justice Michalski the following:

(1)     That the purpose of the requested search was to find drugs when the "true reason for their requested search . . . [was] to seize firearms" to further a federal ATF firearms trafficking investigation (Dkt. 99 at ¶ 14(i));

(2)     Robert Williams was a reliable confidential source, when in fact, he had just been arrested pursuant to that ATF firearms trafficking investigation (based upon evidence seized pursuant to a federal search warrant authorized by Judge Schroeder) and he was motivated to provide information to law enforcement "as part of his desperate bid to help himself given the substantial prison time he now faced" (*id.* at ¶ 14(ii)); and,

(3)     Defendant was selling cocaine at the residence, and Mr. Williams had purchased cocaine from Defendant within the last ten days (*id.* at ¶ 14(iii)).

Defendant also insists that the affidavit failed to adequately describe the residence "which the Government knew to be a two family house with separate occupied upper and lower apartments." (*Id.* at ¶ 14(iv)). This is problematic, according to Defendant, because according to a report of an interview of Mr. Williams prepared by ATF agents, he only reported visiting and seeing Defendant at the upper apartment—thus negating any probable cause for the search of the lower apartment. (*Id.*).

The Government responded in opposition to the objections on August 16, 2019. (Dkt. 112). In its response, the Government maintains that Defendant improperly raises issues not raised before Judge Schroeder and that this Court should not consider Defendant's untimely affidavit. (*Id.* at 6-9). The Government further submits that, in the

event the Court considers the untimely affidavit, it does not establish standing to contest the search of the lower apartment. (*Id.* at 9-14). Finally, the Government argues that the search warrant was supported by probable cause and Defendant has not established his entitlement to a *Franks* hearing. (*Id.* at 14-18).

In addition to its publicly filed response, the Government also submitted to the Court for "*ex parte* in camera review" the notes from Justice Michalski's interview of the confidential source referenced in the search warrant affidavit.

Oral argument was held before the undersigned on August 27, 2019, at which time the Court reserved decision. (Dkt. 114).

## III.   **ANALYSIS**

### A.   *Defendant's Untimely Arguments and Submissions Not Raised Before the Magistrate Judge*

The Court is troubled by Defendant's failure to comply with the deadlines set by Judge Schroeder and the fact that his counsel has now raised arguments in his objections that were never raised before Judge Schroeder. *See Clarke v. United States,* 367 F. Supp. 3d 72, 75 (S.D.N.Y. 2019) ("[B]ecause new claims may not be raised properly at this late juncture, such claims presented in the form of, or along with, 'objections,' should be dismissed." (quotation omitted)); *Jo v. JPMC Specialty Mortg., LLC,* 131 F. Supp. 3d 53, 59 (W.D.N.Y. 2015) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." (quotation omitted)).

The Government insists that there is no basis for Defendant's contention that his prior attorneys disregarded his instructions—and there is some merit to this argument when one considers that Defendant was present on March 12, 2019, when his prior counsel told Judge Schroeder that, after discussing the matter with Defendant and consistent with their approach since the return of the initial indictment, they were electing not to file an affidavit of standing. (Dkt. 112-1 at 62). During oral argument, Defendant's counsel suggested that the true crux of his client's complaint was that his prior attorneys did not review the discovery and uncover the information now presented by his current counsel—that law enforcement purportedly did an "end run" around Judge Schroeder who had issued the federal search warrant. However, for the reasons discussed herein, the Court is not persuaded that this newly uncovered "evidence" justifies any relief. Defendant's arguments are based on speculation and conclusory allegations. Moreover, Defendant has cited no legal authority suggesting that law enforcement officers are precluded from seeking a search warrant from a state court judge upon learning information from the target of a federal investigation. Admittedly, there are potentially meritorious issues raised by the suppression motion, but those issues are unrelated to the so-called evidence uncovered by Defendant's current counsel, and there is no reason that they could not have been addressed by Defendant's prior counsel and within the deadlines set by Judge Schroeder.

The untimely submissions and arguments appear based upon a change in legal strategy now that new counsel is involved. Such a tactic undermines judicial efficiency and represents a blatant disregard of court-imposed deadlines. However, on this record, the Court cannot definitively conclude that Defendant's prior counsel ignored his request

to submit an affidavit of standing. Moreover, the Court notes that the defense strategy by prior counsel appeared to be a moving target—from telling Judge Schroeder at arraignment on the superseding indictment that only a severance motion would be filed, to filing a conclusory motion to suppress, to indicating that no affidavit of standing would be filed. Whether this changing strategy was driven by Defendant or his prior counsel is unclear. However, it is clear that Defendant ultimately elected to retain new counsel. Under the circumstances, where at least one other defendant's suppression motion remains unresolved (Dkt. 69), no trial date has been set,[4] and Defendant states under oath that his prior counsel ignored his instructions, the Court will exercise its discretion and consider the arguments raised for the first time by Defendant along with Defendant's untimely affidavit.

### B.     *Defendant Fails to Satisfy the <u>Franks</u> Standard*

"Ordinarily, a search carried out pursuant to a warrant is presumed valid. However, in certain circumstances, *Franks* permits a defendant to challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search and seizure." *United States v. Mandell*, 752 F.3d 544, 551-52 (2d Cir. 2014) (quotations and citation omitted). As explained by the Second Circuit:

> [T]o suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood

---

[4]     The Court has scheduled a status conference for September 25, 2019, to set a trial date. (Dkt. 117). The Court's willingness to accept Defendant's untimely submission may very well be different if the late filing would delay a scheduled trial or where new counsel was not substituted because of a disagreement between Defendant and his prior counsel.

or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause [or necessity] finding.

*United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000)). The standard for entitlement to a *Franks* hearing is high, *see Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991), and requires a "substantial preliminary showing" that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included in the affidavit for the search warrant, *Franks*, 438 U.S. at 155-56. "An inaccuracy that is the result of negligence or innocent mistake is insufficient." *United States v. Perez*, 247 F. Supp. 2d 459, 472 (S.D.N.Y. 2003). In other words, the Court's "focus is not on whether a mistake was made, but rather on the intention behind the mistake." *United States v. Markey*, 131 F. Supp. 2d 316, 324 (D. Conn. 2001), *aff'd sub nom. United States v. Simpson*, 69 F. App'x 492 (2d Cir. 2003).

With respect to the second step of the Franks test, the Second Circuit has explained:

> To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate. As with the inclusion of false information, "[o]missions from an affidavit that are claimed to be material are governed by the same rules." The ultimate inquiry is whether, after putting aside erroneous information and material omissions, "there remains a residue of independent and lawful information sufficient to support probable cause."

*Canfield*, 212 F.3d at 718 (alteration in original) (citations omitted) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998), and *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985)). In other words, even where a search-warrant affidavit contains false

or misleading information, "a Franks hearing is required only if, 'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.'" *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995) (footnote omitted) (quoting *Franks*, 438 U.S. at 156).

Here, Defendant has failed to satisfy either one of the *Franks* prongs. With respect to the argument that the true reason for the search was to find evidence of firearms trafficking, Defendant speculatively alleges that the information about Defendant's drug trafficking was false. This type of conclusory attack on the search warrant affidavit falls far short of the "substantial preliminary showing" required by *Franks*. *See Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."). In support of his contentions, Defendant cites to an ATF Report of Investigation[5] purportedly reflecting an interview of the alleged confidential source—however, that report references statements about Defendant's possession of drugs (in addition to firearms) and states that the alleged confidential source had "middle[d] drug deals" for Defendant. (Dkt. 99-8 at 1). In other words, it supports the notion that, in addition to trafficking in firearms, Defendant was

---

[5]    Defendant relies on the fact that the ATF Report of Investigation mistakenly states that the alleged confidential source was arrested and interviewed on May 25, 2018, when the correct date was May 18, 2018. (Dkt. 99 at ¶¶ 7-9). However, this is irrelevant to the *Franks* analysis—which looks to the accuracy of the affidavit submitted to the judge who issued the search warrant, not the date on an internal ATF document that was not part of the search warrant application.

trafficking in drugs. There is nothing before the Court demonstrating that the suggestion that Defendant was involved in drug trafficking was false.

Moreover, with respect to the claim that the true purpose of the search warrant was to find evidence of firearms trafficking as opposed to drug trafficking, the fact that law enforcement may have had a dual purpose for executing the search warrant—even a purpose that was not disclosed to the issuing judge—does not automatically satisfy the *Franks* standard. Instead, the nondisclosure of information must have been intended to mislead. *See Rajaratnam*, 719 F.3d at 154 ("An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. . . . [Rather,] *Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate." (emphasis in original) (citations and quotations omitted)). Again, Defendant fails to meet this standard because his arguments are conclusory and based on speculation. There is nothing in the record before the Court suggesting that the information about Defendant's drug trafficking was false. The Intelligence Unit Operation Plan that Defendant relies upon plainly sets forth law enforcement's expectations that significant amounts of drugs will be found upon execution of the search warrant—in addition to firearms. (Dkt. 99-7). Moreover, Defendant was ultimately charged with drug trafficking crimes (in addition to the firearms offenses)—thus supporting a conclusion that Defendant's drug trafficking was at least part of the focus of the investigation.

At best, Defendant has demonstrated that there was additional information related to Defendant's firearms trafficking that was not disclosed to Justice Michalski. However,

not only has Defendant failed to satisfy the first prong of *Franks* with respect to the nondisclosure of that information, he also cannot meet the second prong. In other words, had the information concerning Defendant's firearms trafficking been included in the search warrant affidavit, it would have only further bolstered the finding of probable cause to conduct the search. *See id.* at 146 ("Although omissions are governed by the same rules' as misstatements, the literal Franks approach [does not] seem[ ] adequate because, by their nature, omissions cannot be deleted; therefore [a] better approach . . . would be to . . . insert the omitted truths revealed at the suppression hearing." (alterations in original) (citation and quotations omitted)).

Finally, Defendant contends that a *Franks* hearing is required because the search warrant affidavit indicated that the confidential source was reliable but did not disclose that the confidential source had just been arrested for firearms trafficking and was allegedly attempting to "cut some kind of deal" in order to minimize his own criminal exposure. (Dkt. 99 at ¶ 10). Relatedly, Defendant argues that law enforcement avoided returning to Judge Schroeder for consideration of the search warrant application because he would have been familiar with the circumstances concerning the arrest of the confidential source. The Court is not persuaded. This is not a case where the search warrant affidavit attempted to establish the confidential source's reliability. Rather, the confidential source was produced to Justice Michalski, "and after being sworn, did testify under oath as to his/her knowledge concerning the persons, places, and things which are subject of this search warrant." (Dkt. 99-6 at ¶ 2(d)(i)). Under the circumstances, Justice Michalski was able to make his own assessment of the confidential source's reliability, thus defeating any claim that the

description of the confidential source as "reliable" was somehow designed to mislead. *See United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996) (confidential informant's sworn testimony before judge issuing search warrant was self-corroborating and supplied "its own indicia of reliability"); *see also Canfield*, 212 F.3d at 719 ("[I]t is improper to discount an informant's information simply because he has no proven record of truthfulness or accuracy." (quotation omitted)).

In sum, Defendant has failed to satisfy the high burden necessary for a *Franks* hearing—he has not made a substantial preliminary showing that a false statement was knowingly or intentionally, or with reckless disregard for the truth, included within the search warrant affidavit, or that information was omitted that was designed to mislead, or in reckless disregard of whether the omission would mislead. Similarly, even if Defendant could satisfy that first prong of the *Franks* standard, he has failed to demonstrate that any alleged false statement was necessary to the probable cause determination or that the inclusion of any omitted information would have defeated the probable cause finding. As a result, Defendant's request for a *Franks* hearing is denied.

### C.  *Other Issues Raised by Defendant's Objections*

The focus of Defendant's objections relates to the allegations of factual inaccuracies in the search warrant affidavit, and as discussed above, the Court rejects Defendant's request for a *Franks* hearing. However, Defendant also argues that probable cause was lacking for the search of the lower apartment because the confidential source purportedly

only observed Defendant in the upper apartment. (Dkt. 99 at ¶ 14(iv)).[6] This raises several issues, which the Court is not able to resolve on the current record.

### 1. Defendant's Standing with Respect to the Lower Apartment

The Government concedes that Defendant's untimely affidavit establishes standing to contest the search of the upper apartment at 89 Parkridge Avenue, but it challenges Defendant's standing with respect to the lower apartment. (Dkt. 112 at 9-14). The current record contains evidence that Defendant owns the entire residence, but he stayed as an overnight guest and had access to only the upper apartment. (Dkt. 99-2 at ¶ 3). Defendant states in his affidavit that the downstairs apartment had been rented to his aunt and uncle since approximately 2013 (*id.* at ¶ 2), but no other information is provided.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (quotation omitted). In other words, "a defendant's Fourth Amendment rights are violated 'only when the challenged conduct invade[s] his legitimate expectation of privacy rather than that of a third party.'" *United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018) (alteration in original) (emphasis omitted) (quoting *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002)), *cert. denied, Santillan v. United States*, ___ U.S. ___, 139 S. Ct. 1467 (2019); *see*

---

[6]      To the extent Defendant argues that the two-family nature of the residence was not disclosed to Justice Michalski (Dkt. 99 at ¶ 14(iv)), this is plainly contradicted by the search warrant which describes the residence as a "two-family, wood frame home" (Dkt. 99-6 at 1).

*also Haqq*, 278 F.3d at 47 ("The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has an expectation of privacy in the place searched.") (emphasis and quotation omitted)). An individual challenging a search under the Fourth Amendment "must demonstrate a subjective expectation of privacy in the place searched, and that expectation must be objectively reasonable." *United States v. Lyle*, 919 F.3d 716, 727 (2d Cir.), *petition for cert. docketed*, No. 19-5671 (Aug. 22, 2019).

On the present record, the Court is not able to resolve whether Defendant has standing to object to the search of the lower apartment.

### 2. Probable Cause for Issuance of Search Warrant

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

> [T]he duty of a court reviewing the validity of a search warrant is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed. A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant.

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (alterations in original) (quotations and citation omitted). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (second alteration in original) (quoting *Gates*, 462

U.S. at 236). "[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant, and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (alteration in original) (citations omitted)).

Here, the search warrant was for the entire "two-family" residence at 89 Parkridge Avenue. (Dkt. 99-6). A search warrant for a multi-family dwelling must "be supported by a showing of probable cause as to each unit." *Clark*, 638 F.3d at 94. The search warrant affidavit does not appear to distinguish between the upper and lower apartments (Dkt. 99-6), although Justice Michalski's notes (discussed below) refer to each apartment.

In addition, the search warrant application is plainly based upon the information obtained from the confidential source, who was produced to Justice Michalski to give sworn testimony. "In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the 'totality of the circumstances' bearing upon its reliability." *Smith*, 9 F.3d at 1012; *see Gates*, 462 U.S. at 233-234 (describing evaluation of informant's information under totality of circumstances test); *see Hernandez*, 85 F.3d at 1028 (concluding that probable cause for search warrant

was supported by "detailed, specific, and sworn testimony of the confidential informant");

*United States v. Monk*, 499 F. Supp. 2d 268, 271-72 (E.D.N.Y. 2007) (issuing judge's

probable cause determination based upon confidential informant's testimony given under

penalty of perjury entitled to great deference); *United States v. Ortiz*, 499 F. Supp. 2d 224,

228 (E.D.N.Y. 2007) (concluding that information provided by informant was sufficiently

reliable so as to establish probable cause for search warrant based, in part, on hearing

transcript of proceedings before issuing judge).

Here, the search warrant affidavit does not refer to the details of the confidential

source's testimony. Thus, consideration of Justice Michalski's notes appears necessary.

The issues surrounding the Court's consideration of those notes is discussed below.

### 3. Court's Consideration of Justice Michalski's Notes

The Government has submitted to the Court for an *in camera* and *ex parte* review

an unredacted copy of Justice Michalski's notes. The Government has not provided any

legal basis for the submission of these notes only for the Court's review or why the notes

in at least a redacted form cannot be produced to Defendant. *Cf. United States v. Odeh*,

552 F.3d 157, 165 (2d Cir. 2008) (finding district court did not abuse discretion in

reviewing certain evidence related to suppression motion *in camera* and *ex parte* given

national security concerns).

Moreover, the notes do not appear to be a comprehensive recitation of the testimony

provided by the confidential source to Justice Michalski. As a general proposition, "[a]ll

data necessary to show probable cause for the issuance of a search warrant must be

contained within the four corners of a written affidavit given under oath." *United States v.*

*Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (quoting *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006)). However:

> [T]he Fourth Amendment permits the warrant-issuing magistrate to consider sworn oral testimony supplementing a duly executed affidavit to determine whether there is probable cause upon which to issue a search warrant. Thus, where—as here—the court considered oral testimony in support of the warrant, the determination of probable cause is not necessarily restricted to the four corners of the affidavit.

*United States v. Morris*, No. 09-CR-38(S)(M), 2011 WL 13127949, at *3 (W.D.N.Y. Mar. 16, 2011) (quotations and citation omitted), *aff'd*, *United States v. Morris*, 509 F. App'x 58 (2d Cir. 2013). In such cases, the Court may consider the issuing judge's notes in ascertaining the content of the testimony. *See id.*

The Court notes that New York Criminal Procedure Law § 690.40(1) provides that "[i]n determining an application for a search warrant the court may examine, under oath, any person whom it believes may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court." The New York Court of Appeals has held that "substantial—rather than literal—compliance may satisfy" this requirement, but has also concluded that a judge's "few notes taken for his own edification cannot be equated with an effort, let alone a *conscientious* effort, to create a contemporaneous record of the testimony . . . as required by statute." *People v. Taylor*, 73 N.Y.2d 683, 689 (1989) (emphasis in original). However, at least one appellate court in New York has found that a judge's notes that "summariz[e] the essential points of the testimony . . . are adequate to substantially comply with the requirements of CPL 690.40(1)." *People v. Mendoza*, 5 A.D.3d 810, 812 (3d Dep't 2004).

In any event, "the Fourth Amendment does not incorporate state *procedural* criminal law." *United States v. Bernacet*, 724 F.3d 269, 277 (2d Cir. 2013) (emphasis in original); *see also Smith*, 9 F.3d at 1014 ("[T]he touchstone of a federal court's review of a state search warrant secured by local police officials and employed in a federal prosecution is the Fourth Amendment and its requirements, and no more."); *United States v. Jones*, No. 10-CR-168, 2013 WL 4541042, at *5 (W.D.N.Y. Aug. 27, 2013) ("Where evidence secured from a state search warrant is employed in a federal prosecution, . . . review of the warrant is concerned solely with the requirements of the Fourth Amendment."). "The Fourth Amendment does not require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit." *Morris*, 2011 WL 13127949, at *3 (quoting *United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992)).

While reference to the notes appears necessary for any probable cause review, it is not clear on the current record that the Court can adequately decipher the content of the notes.

### 4.    *Good Faith*

Of course, even if the warrant lacked probable cause and Defendant's Fourth Amendment rights were violated when 89 Parkland Avenue was searched, the exclusionary rule does not automatically operate to suppress the seized evidence. "Indeed, exclusion has always been our last resort, not our first impulse." *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)).  There are

four circumstances where an exception to the exclusionary rule would not apply and evidence obtained pursuant to a warrant lacking probable cause should be excluded:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; [or] (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)). "These exceptions reflect the general rule that, '[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *United States v. Romain*, 678 F. App'x 23, 25 (2d Cir. 2017) (alteration in original) (quoting *Herring*, 555 U.S. at 144). "The pertinent analysis of deterrence and culpability is objective, and our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Rosa*, 626 F.3d at 64 (quoting *Herring*, 555 U.S. at 145) (internal quotations omitted)).

"The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance' on an invalidated warrant." *Clark*, 638 F.3d at 100 (quotation omitted). Moreover, as counseled by the Second Circuit, in assessing whether the government has met its burden, a court must consider that "in *Leon*, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection." *Id.*

At this stage, neither party has briefed the issues related to good faith, and accordingly, the Court is not able to meaningfully address that issue based on the current record.

## IV.  CONCLUSION

For the foregoing reasons, the Court will accept the untimely arguments and affidavit submitted on behalf of Defendant.  Considering the untimely submissions, the Court concludes that Defendant has failed to meet the standard for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  However, because outstanding issues remain as set forth herein, the Court continues to reserve decision on the motion to suppress and sets a status conference for September 25, 2019, at 12:45 PM, at the United States Courthouse in Buffalo, New York.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      September 19, 2019
            Rochester, New York