UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.

TITUS THOMPSON,

Defendant.

**DECISION AND ORDER**

1:18-CR-00126 EAW

## I.  INTRODUCTION

Presently before the Court is a motion by defendant Titus Thompson ("Defendant") to suppress evidence seized upon execution of a search warrant signed by Acting New York State Supreme Court Justice John L. Michalski.  The search warrant was executed on May 18, 2018, at 89 Parkridge Avenue, Buffalo, New York, a two-family residence owned by Defendant.  Although Defendant initially filed an omnibus pretrial motion seeking suppression (Dkt. 64), he failed to support that motion with any specifics or an affidavit of standing.  Upon retaining new counsel, Defendant submitted an affidavit purporting to establish standing and he also raised new arguments in support of suppression.  (Dkt. 99).  Although a report and recommendation was pending before the undersigned recommending denial of the motion to suppress based upon the failure to submit an affidavit of standing (Dkt. 92), the Court reopened the matter and conducted a suppression hearing (Dkt. 140; Dkt. 151).  Now, after considering the evidence introduced at the hearing and the arguments advanced on behalf of each party, the Court denies Defendant's motion to suppress for the reasons that follow.

- 1 -

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Pending Charges

Defendant stands accused by way of a Superseding Indictment returned on October 11, 2018, with the following five counts: (1) conspiracy to commit firearms offenses in violation of 18 U.S.C. § 371; (2) unlawfully dealing in firearms in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D); (3) felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (4) using and maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1); and (5) possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(a)(i).  (Dkt. 31).  The Superseding Indictment charged a total of ten defendants.[1]  (Id.).

### B.  Procedural Background

On January 18, 2019, Defendant filed omnibus pretrial motions, including a motion to suppress physical evidence seized upon execution of a search warrant on or about May 18, 2018, at a two-family residence located at 89 Parkridge Avenue in Buffalo, New York. (Dkt. 64).  On May 28, 2019, Judge Schroeder[2] issued a Report, Recommendation and Order (the "R&R") concluding that because no affidavit of standing was filed by

---

[1]   The original indictment, returned on June 14, 2018, named only Defendant and contained only one count—felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Dkt. 2).

[2]   The undersigned referred all pretrial matters in the case to United States Magistrate Judge H. Kenneth Schroeder, Jr., pursuant to 28 U.S.C. § 636(b)(1)(A)-(B).  (Dkt. 4).

Defendant, he was not entitled to an evidentiary hearing on his suppression motion and therefore recommended that this Court deny Defendant's motion to suppress. (Dkt. 92). On July 11, 2019, Defendant (represented by new counsel) filed objections to the R&R, raising issues that had not been raised before Judge Schroeder (Dkt. 99) and submitting an affidavit from Defendant (Dkt. 99-2). The Government filed a response to Defendant's objections on August 16, 2019 (Dkt. 112), and oral argument was held before the undersigned on August 27, 2019 (Dkt. 114).

On September 19, 2019, the Court issued a Decision and Order finding: (1) the Court would accept Defendant's untimely submissions; (2) Defendant had failed to meet the standard for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978); and (3) outstanding issues remained concerning the motion to suppress. (Dkt. 118). A status conference was held on September 25, 2019 (Dkt. 120), and the Court set deadlines for further submissions (Dkt. 122; Dkt. 130). On October 18, 2019, both the Government and Defendant filed supplemental submissions. (Dkt. 132; Dkt. 134). Oral argument was held on October 24, 2019, and the Court scheduled an evidentiary hearing to proceed with respect to Defendant's motion to suppress. (Dkt. 140).

The evidentiary hearing went forward on November 14, 2019. (Dkt. 151; Dkt. 171). The Government presented the testimony of the Honorable John L. Michalski, Acting New York State Supreme Court Justice, who signed the search warrant for 89 Parkridge Avenue; Erie County Assistant District Attorney John Gerken ("ADA Gerken"), who took part in the presentation of the search warrant application to Justice Michalski; and a special agent

with the Bureau of Alcohol, Tobacco, Firearms and Explosives, Paul Brostko ("SA Brostko"), who was involved in execution of the search warrant at 89 Parkridge Avenue.

The Court set a deadline for the filing of post-hearing submissions. (Dkt. 151). In accordance with that schedule, both parties filed post-hearing submissions. (Dkt. 169 (Defendant's Supplemental Affirmation); Dkt. 170 (Government's Post-Suppression Hearing Brief)). Neither party responded to the other's filing in accordance with the Court's schedule. (*See* Dkt. 151).

## C. The Search Warrant

The search warrant authorized a search of "89 Parkridge, Buffalo, NY–a gold/yellow, two-family, wood framed home with a lower front porch on the front and a driveway along the right side" and a vehicle described as "2017 Lincoln Continental, NY REG HYK 3796." (Dkt. 99-6 at 1).[3] The warrant was based upon a finding of "probable cause to believe . . . that certain property is unlawfully possessed, TO WIT: cocaine or any other controlled substances." (*Id.*). The warrant authorized a search to include the following property:

> cocaine and any other controlled substances, drug paraphernalia, proceeds from illicit drug trafficking, any and all electronic devices such as cellular telephones, tablets and computers-photographs and data therein, and any personal papers or documents which tend to identify the owner, lease or whomever has custody or control over the premises or vehicle searched or the items seized, and house keys which would tend to identify the owner, lessee or whomever has custody or control over the premises, vehicle or items seized, or deemed to be records or evidence that tends to demonstrate that an offense or crime was committed, or that a particular person participated in the commission of an offense or crime, which property is

---

[3]     The search warrant also authorized the search of Defendant "as well as any person threat or therein such premises or vehicle. . . ." (Dkt. 99-6 at 1).

unlawfully possessed, or has been used, or is possessed for the purpose of being used to commit the commission of an offense, or constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense or crime.

(*Id.* at 1-2).

The Government submits that upon execution of the search warrant, drug-related materials, firearms, and ammunition were recovered in the upper apartment at 89 Parkridge Avenue, as follows:

(1) a Glock, Model 23, .40 caliber pistol, bearing serial number DRY120, (2) an FN, Model FNS-9C, 9mm pistol, bearing serial number CSU0058308, (3) various amounts of ammunition, (4) two baggies of green leafy substance suspected to be Marijuana in the dresser drawer of the southeast bedroom, (5) a stainless steel kilo press with hydraulic jack and spray bottle found in a box on the attic floor, (6) Duct tape and ([7]) drug paraphernalia including a digital scale, another digital scale capable of weighing 2000g, vacuum sealer with bags strainer, sandwich bags, small individual narcotics envelopes, blender and blender parts and 40 bars of Mannite Cicogna, a cutting agent.

(Dkt. 112 at 2). In other words, in addition to evidence related to drug trafficking, two firearms and ammunition were recovered from the upper apartment. In addition, ten firearms and ammunition were recovered from the lower apartment at 89 Parkridge Avenue. (*Id.* at 2-3).

### D. The Evidentiary Hearing on November 14, 2019

1. Justice Michalski's Testimony

Justice Michalski testified that Buffalo Police Department Detective Michael Acquino ("Detective Acquino") and ADA Gerken met with him in his Chambers at 25 Delaware Avenue in Buffalo, New York, on May 18, 2018, with an application for a search

warrant, and they were accompanied by a confidential informant. (T[4] 6-9). Justice Michalski administered an oath to both Detective Acquino and the confidential informant, and he interviewed both of them and reviewed the search warrant application. (T 8-9, 12-13, 14-15). Detective Acquino signed the search warrant application in Justice Michalski's presence, after being administered the oath and questioned by Justice Michalski. (T 11). Justice Michalski made notes summarizing his interview of the confidential informant. (T 14, 16, 18; Govt. Ex.[5] 2). Justice Michalski testified that it was his hope that the handwritten notes that he took of the witness' testimony were prepared in accordance with New York Criminal Procedure Law § 690.40(4). (T 39).[6]

Justice Michalski testified that the confidential informant told him that he had been in both the upper and lower apartments at 89 Parkridge Avenue within the past 10 days, and that he had purchased powdered cocaine from Defendant at the residence. (T 17, 18-19). Justice Michalski also testified that the confidential informant told him that he had known Defendant for a number of years, and that Defendant had a "Gatling gun" in the trunk of a 2017 Lincoln continental. (T 17). At the evidentiary hearing, Justice Michalski repeatedly testified, during both direct and cross examination, that he found the confidential informant to be "completely credible" and he explained the basis for his

---

[4]     "T" refers to the revised transcript of the evidentiary hearing conducted on November 14, 2019, which has been filed at Docket No. 171.

[5]     "Govt. Ex." refers to the corresponding Government exhibit introduced into evidence at the November 14, 2019, hearing.

[6]     ADA Gerken testified that he observed Justice Michalski take these notes simultaneously while he was asking questions of the confidential informant. (T 56).

conclusion in that regard. (T 19-20, 37-38, 43-44, 46). Justice Michalski testified that in assessing the cooperating witness' credibility, he was not influenced by the characterization of the individual in the search warrant application as a "reliable confidential source." (T 36). He could not recall specifically whether he had information presented to him concerning the witness' criminal history or circumstances regarding his cooperation with law enforcement (T 36-37, 44), although he is typically told the origin of a confidential source cooperating (T 44).[7]

Justice Michalski testified that he signed the search warrant for the upper and lower apartments at 89 Parkridge Avenue and the Lincoln after making a determination that there was probable cause to conduct the search, based on Detective Acquino's search warrant application and the interview of the confidential informant. (T 22; Govt. Ex. 3). Justice Michalski testified that the search warrant authorized the search for both drugs and weapons. (T 23-24). However, on cross examination Justice Michalski acknowledged that the search warrant and application may not have contained any reference to firearms. (T 25).

### 2. ADA Gerken's Testimony

ADA Gerken testified that on May 18, 2018, he interviewed Detective Acquino and the confidential informant at his office, and after determining that there was probable cause to support a request for a search warrant, he assisted in the drafting of the search warrant

---

[7] ADA Gerken testified that he recalled both Detective Acquino and the confidential informant told Justice Michalski that the confidential informant "had been picked up by law enforcement and was under arrest." (T 57).

and he contacted Justice Michalski. (T 49-51). ADA Gerken testified that the confidential informant told him that he was inside the residence at 89 Parkridge Avenue within the past 10 days and, while inside, he observed both firearms and cocaine. (T 52). ADA Gerken testified that the confidential informant told him that he was purchasing drugs from Defendant at the residence. (T 52-53). The confidential informant told ADA Gerken that he had known Defendant for a period of years. (T 54). ADA Gerken testified that Detective Acquino relayed that he had researched the confidential informant's claims and found them to be reliable. (T 62-63).

ADA Gerken testified that the confidential informant described a transaction where he was in the upper apartment with Defendant, there was a conversation about an exchange for a firearm, Defendant left the upper apartment and walked down the stairwell to the lower apartment, he heard Defendant open the door and enter the lower apartment, he then heard Defendant exit the lower apartment, and Defendant then returned to the upper apartment, at which point Defendant had a weapon in his hands that he did not have previously. (T 53). ADA Gerken testified that this transaction occurred over the course of minutes, and it occurred less than 10 days prior to May 18, 2018. (T 53-54).

ADA Gerken testified that the search warrant "was drafted for cocaine, originally, because I believe that the law enforcement officers wanted to do that in order to protect the confidential informant." (T 58). In response to a question from the Court, ADA Gerken explained:

> Sometimes when I deal with detectives and they have probable cause for guns and drugs, they find it much more common for suspects to deal in drugs than guns, so they prepare, draft the search warrant for drugs rather than guns

- 8 -

and drugs, so if the confidential target sold drugs to that 20 different people in that week, but only sold guns to two different people that week, we would be protecting our confidential informant if our confidential informant was there to buy guns. . . .

(T at 58-59).

### 3. SA Brostko's Testimony

SA Brostko testified that the search warrant authorized agents to locate and seize "firearms, firearms accessories, ammunition, evidence of firearms trafficking," as well as controlled substances. (T 74). However, he admitted that he did not see the search warrant on May 18, 2018. (T 74). He conceded that the primary purpose of his investigation was firearms trafficking. (T 105; *see also* T 109 (testifying that "primary purpose" of the search was for firearms)).

SA Brostko identified photographs depicting firearms and drug trafficking materials found in the upper apartment. (T 78-86). He also identified photographs depicting various firearms, magazines, and ammunition recovered from the lower apartment. (T 86-91). One of the firearms recovered from the upper apartment was discovered in a box on the floor of one of the bedrooms next to what appears to be a dresser (T 73-74, 75, 79; Govt. Ex. 4A, 4B, 4C), and the other was discovered underneath the cushion of couch in the front living room (T 76-77, 80-81; Govt. Ex. 4E, 4F).

## III.   LEGAL ANALYSIS

### A.   Defendant Lacks Standing to Challenge the Search of Lower Apartment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const. amend. IV. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (quotation omitted). In other words, "a defendant's Fourth Amendment rights are violated 'only when the challenged conduct invade[s] his legitimate expectation of privacy rather than that of a third party.'" *United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018) (alteration in original and emphasis omitted) (quoting *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002)), *cert. denied, Santillan v. United States*, ___ U.S. ___, 139 S. Ct. 1467 (2019); *see also Haqq*, 278 F.3d at 47 ("The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has an expectation of privacy in the place searched.") (emphasis and quotation omitted)). An individual challenging a search under the Fourth Amendment "must demonstrate a subjective expectation of privacy in the place searched, and that expectation must be objectively reasonable." *United States v. Lyle*, 919 F.3d 716, 727 (2d Cir. 2019), *petition for cert. docketed*, No. 19-5671 (Aug. 22, 2019).

As detailed in the Court's Decision and Order entered September 19, 2019, Defendant initially failed to submit an affidavit of standing in support of his motion to suppress. (Dkt. 118 at 3-4). However, upon retaining new counsel, an affidavit from Defendant was submitted purporting to establish his standing to challenge the search at 89 Parkridge Avenue. (Dkt. 99-2). In that affidavit, Defendant states that as of the date of the execution of the search warrant, he was the "record owner of the residential property located at 89 Parkridge, Buffalo, New York, a two family house consisting of two apartments, one upstairs and one downstairs." (*Id.* at ¶ 2). Defendant contends that he

rented the upstairs apartment to his brother in May 2018, and that the lower apartment had been rented to his aunt and uncle since approximately 2013. (*Id.*). Defendant sets forth factual information that the Government agrees establishes his standing to contest execution of the search warrant at the upper apartment. (*See id.* at ¶ 3; Dkt. 112 at 9-14).

However, with respect to the lower apartment, apart from his ownership of the premises, Defendant has failed to submit any information to meet his burden to establish that he had an expectation of privacy with respect to the lower apartment. *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980) (party challenging search "bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in [the property searched]."). In fact, in his written submissions subsequent to this Court's Decision and Order entered September 19, 2019, which identified Defendant's standing to challenge the search of the lower apartment as an unresolved and outstanding issue, Defendant has failed to even address that issue—effectively conceding that he does not have standing to challenge that aspect of the search. (*See* Dkt. 132 (Defendant's Supplemental Memorandum of Law); Dkt. 169 (Defendant's Supplemental Affirmation)).

Defendant's ownership of the property is certainly a fact to be considered in assessing whether he had an expectation of privacy in the lower apartment, but "'arcane' concepts of property law [do not] . . . control the ability to claim the protections of the Fourth Amendment." *Rawlings*, 448 U.S. at 105 (quoting *Rakas*, 439 U.S. at 149-50); *see United States v. Salvucci*, 448 U.S. 83, 91 (1980) ("While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of this Court's

inquiry." (citation omitted)). "It is well established that a landlord does not have a reasonable expectation of privacy with respect to property that he has rented to a tenant, and that is occupied by that tenant." *Tarantino v. City of Hornell*, 615 F. Supp. 2d 102, 109 (W.D.N.Y. 2009) (collecting cases) (abrogated in unrelated part by *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010)). Factors other than property ownership that must be considered in assessing standing to challenge a search "include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has demonstrated a subjective expectation of privacy, and whether he took precautions to maintain his privacy." *United States v. Cruz*, 475 F. Supp. 2d 250, 257-58 (W.D.N.Y. 2007) (holding that defendant failed to demonstrate reasonable expectation of privacy in locked refrigerator in basement of property owned by defendant, where he occasionally visited overnight but rented house to mother). Here, Defendant has failed to submit any evidence with respect to these other factors, and his sole reliance on his ownership of the property is insufficient to establish standing. [8] *See id.* at 253 ("The fact that Cruz allegedly owned the premises does not by itself justify a reasonable expectation of privacy.").

---

[8] In an attempt to rebut a potential argument by Defendant that standing could be based on the testimony elicited from ADA Gerken and Justice Michalski that the confidential informant identified Defendant as having access to the lower apartment, the Government argues that this would be insufficient to support standing. (Dkt. 170 at 4). Not only does the Court agree with the Government, but again Defendant appears to have abandoned any standing argument with respect to the lower apartment and he certainly did not cite to this testimony to support a claim of standing. In any event, even coupled with his ownership of the premises, this evidence is insufficient to satisfy Defendant's burden to establish a subjective expectation of privacy in the lower apartment or that any such expectation was objectively reasonable.

Accordingly, to the extent Defendant seeks to suppress the evidence seized from the lower apartment, his motion is denied.

## B.    Probable Cause to Search the Upper Apartment

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

> [T]he duty of a court reviewing the validity of a search warrant is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant.

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (citations, internal quotation marks, and original alterations omitted); *see also Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("[A] reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate. . . ."). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236) (alteration in original). "[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see also United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case,

but also from its 'strong preference' for searches conducted pursuant to a warrant, and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.'" (alteration in original and citations omitted)).

Here, the credible evidence[9] presented at the November 14, 2019, hearing sufficiently established probable cause to support the search warrant for the upper apartment.[10] Specifically, based on Justice Michalski's testimony and his contemporaneously recorded handwritten notes,[11] as well as the testimony of ADA Gerken who was personally present in Justice Michalski's Chambers during the confidential informant's sworn testimony, the Court finds that the confidential informant testified to Justice Michalski under oath that he had a history with Defendant, that he had purchased powdered cocaine from Defendant within the past 10 days, that he had observed firsthand drugs and firearms in the upper apartment within the past 10 days, that he described a

---

[9]     Having had the opportunity to observe Justice Michalski, ADA Gerken, and SA Brostko testify during the hearing on November 14, 2019, the Court finds that each was a credible witness.

[10]     Because Defendant failed to establish standing to challenge the search of the lower apartment, the Court's sole inquiry is whether probable cause supported a search of the upper apartment. However, the evidence adduced during the hearing also supported probable cause to search the lower apartment, based on Defendant's use of the lower apartment for his activities related to drug trafficking and possession of firearms.

[11]     The Court does not and need not reach the issue of whether the notes created by Justice Michalski concerning the confidential informant's sworn testimony complied with New York Criminal Procedure Law ("CPL") § 690.40(1). As the Court explained in its Decision and Order entered on September 19, 2019, the requirements of CPL § 690.40(1) need not be met in order to satisfy the Fourth Amendment. (Dkt. 118 at 19).

transaction where Defendant left the upper apartment and retrieved a firearm from the lower apartment, and that he was familiar with the vehicle drive by Defendant and that a particular type of firearm was kept in the trunk. Moreover, Detective Acquino confirmed the confidential informant's information, including that Defendant owned the premises, by researching utilities and driving by the residence with the confidential informant. The credible evidence at the hearing also established that Justice Michalski was provided with sufficient details regarding the background of the confidential informant's cooperation, including the fact that he had just been arrested earlier that day. Based on his assessment of the confidential informant's testimony, Justice Michalski concluded that the confidential informant was credible and that the information he provided was reliable. Justice Michalski did not rely on the reference to the informant as "reliable" in the search warrant application in making that determination.

Defendant challenges the determination that the confidential informant was reliable. (*See* Dkt. 169 at ¶ 6). "In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the 'totality of the circumstances' bearing upon its reliability." *Smith*, 9 F.3d at 1012; *see also Gates*, 462 U.S. at 233-234 (describing evaluation of informant's information under totality of circumstances test); *Hernandez*, 85 F.3d at 1028 (concluding that probable cause for search warrant was supported by "detailed, specific, and sworn testimony of the confidential informant"); *United States v. Monk*, 499 F. Supp. 2d 268, 271-72 (E.D.N.Y. 2007) (issuing judge's probable cause determination based upon confidential informant's testimony given

under penalty of perjury entitled to great deference); *United States v. Ortiz*, 499 F. Supp. 2d 224, 228 (E.D.N.Y. 2007) (concluding that information provided by informant was sufficiently reliable so as to establish probable cause for search warrant based, in part, on hearing transcript of proceedings before issuing judge).

As the Court indicated in its Decision and Order dated September 19, 2019, the search warrant affidavit did not reference the details of the confidential informant's testimony, thus necessitating the evidentiary hearing that was conducted on November 14, 2019. (Dkt. 118 at 19). At that hearing, through the credible testimony of Justice Michalski and ADA Gerken, the Government established that probable cause to search the upper apartment for drugs and guns was supported by the confidential source's sworn testimony before Justice Michalski and Detective Acquino's sworn affidavit. The reliability of the confidential informant's information was not based on any reference to him as such in Detective Acquino's affidavit—in fact, Justice Michalski expressly disclaimed any reliance on the terminology in the affidavit. (T 36). Instead, the confidential informant "testified as to events that he claimed to have witnessed first-hand" and he "testified under threat of the criminal sanction for perjury." *Hernandez*, 85 F.3d at 1028. As recognized by the Second Circuit, "'[a] detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability.'" *Id.* (quoting *United States v. Elliott*, 893 F.2d 220, 223 (9th Cir. 1990)) (alteration in original).

Justice Michalski's determination that probable cause existed, based on "the face-to-face testimony of the Informant," and the "face-to-face testimony and sworn affidavit" of Detective Acquino "all offered under penalty of perjury" is entitled to "great deference."

*Monk*, 499 F. Supp. 2d at 272-72. There were other indicia of reliability as well, including Detective Acquino's confirmation that Defendant owned the premises and his observation of the residence with the confidential informant. Plainly, Justice Michalski, who was fully informed of all necessary facts, had a substantial basis for concluding that probable cause existed to search the upper apartment. Accordingly, Defendant's challenge to the search warrant as lacking in probable cause to search the upper apartment is denied.

## C. Failure of Warrant to Reference Guns

In Defendant's Supplemental Affirmation submitted after the evidentiary hearing, he argues that the search of 89 Parkridge Avenue was "pretextual" because SA Brostko and the other law enforcement officers entered the residence for the specific purpose of searching for guns, even though the search warrant did not authorize a search for firearms. (Dkt. 169 at ¶ 2). Defendant contends that the law enforcement officers "unilaterally determined on their own and without judicial authorization to broaden their search to look for things that were not contemplated by Judge Michalski when he signed his search warrant." (*Id.*). Defendant argues that law enforcement misrepresented to Judge Michalski "that the purpose of their requested search was to find 'cocaine and other controlled substances' and thereby withheld from Judge Michalski the true reason for their requested search, to seize firearms." (*Id.* at ¶ 3).

As an initial matter, the evidence adduced at the hearing on November 14, 2019, does not support Defendant's contention. Rather, the presence of firearms at the place to be searched was plainly disclosed to Justice Michalski. The Court finds that the credible evidence offered at the hearing established probable cause to search for both guns and

- 17 -

drugs at 89 Parkridge Avenue, but guns were not referenced in the search warrant in order to protect the identity of the confidential informant.

Moreover, even if the search of the premises for drugs was pretextual—in other words, as claimed by Defendant, law enforcement's true objective was to locate firearms as opposed to drugs—it is irrelevant to this Court's reviewing function. *See United States v. Pascarella*, 84 F.3d 61, 72 (2d Cir. 1996) (validity of warrant and search cannot be impeached by claim that search was pretextual in that "although the warrant dealt with evidence of gambling, the government's real motive was to discover evidence relating to the stolen check scheme"); *see also Whren v. United States*, 517 U.S. 806, 813-14 (1996) (holding that temporary detention of motorist based upon probable cause to believe that he had violated traffic laws does not violate Fourth Amendment, even if reasonable officer would not have stopped motorist absent some additional law enforcement objective); *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998) ("The officer was rightfully on the scene pursuant to a valid warrant allowing a search for evidence of hunting violations. That the . . . officer might have hoped to find evidence relating to cocaine trafficking is irrelevant to the Fourth Amendment analysis. . . ."). In other words, if the warrant was supported by probable cause, then the fact that the stated purpose of the search was pretextual does not undermine that probable cause determination.

In reality, while not couched in this manner by Defendant, the argument that the warrant did not reference the seizure of firearms raises a particularity issue.[12] The Fourth

---

[12]    Any argument in this regard would only be relevant with respect to the seizure of the firearms because drugs and related paraphernalia were plainly described in the scope

- 18 -

Amendment requires that a warrant must state with particularity the items to be searched and seized. *See* U.S. Const. amend. IV. "This particularity requirement protects individuals from 'exploratory rummaging' not supported by probable cause." *United States v. Bershchansky,* 788 F.3d 102, 111 (2d Cir. 2015) (quoting *United States v. Galpin,* 720 F.3d 436, 445 (2d Cir. 2013)); *see also United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) ("[T]he particularity requirement guards against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.").

Of course, it is well-established that "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *United States v. Graziano*, 558 F. Supp. 2d 304, 311 (E.D.N.Y. 2008) (quoting *Payton v. New York*, 445 U.S. 573, 587 (1980)) (alteration in original). As a result, if law enforcement is lawfully in a residence executing a search warrant and they view an object where its "incriminating character is immediately apparent" then the officers may seize the object without a warrant if they have a lawful right of access to it, such as where the item is inherently dangerous. *Id.* at 311-12 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 275 (1993)) (denying motion to suppress firearms seized upon execution of state search warrant for gambling activity); *see also United States v. Moran*, No. 11-CR-6083CJS, 2014 WL 7476252, at *7 (W.D.N.Y. Dec.

of the warrant. *See United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) ("[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search.").

24, 2014) ("The only evidence seized from Moran's residence that was outside the scope of the warrant was the marijuana and the firearms, and those items were lawfully seized either incident to Moran's arrest or in plain view during the course of the search for Hell's Angels' insignia authorized by the warrant.").

Here, not only did Defendant never raise a particularity objection to the warrant's failure to identify firearms as within the scope of the search,[13] but the evidence at the hearing established that the firearms were found in plain view during execution of the warrant. SA Brostko testified concerning the two firearms discovered in the upper apartment, identifying two boxes on the floor of one of the bedrooms next to what appears to be a dresser with one box containing a high capacity magazine and another containing a pistol (T at 73-74, 75, 79; see also Govt. Ex. 4A, 4B, 4C); and identifying a pistol discovered underneath the cushions of a couch in the front living room of the apartment (T at 76-77, 80-81; Govt. Ex. 4E, 4F). Accordingly, even if it had been raised by Defendant, the failure of the warrant to describe firearms within its scope does not warrant suppression of the evidence.

---

[13] To be clear, Defendant raises the failure to identify firearms in the warrant, but he does so in the context of his argument that law enforcement made misrepresentations to Justice Michalski—not as a particularity issue. The Court has already rejected Defendant's claims that there were either deliberate falsehoods or material omissions in the search warrant application presented to Justice Michalski, or that there was something nefarious about the presentation of the application to Justice Michalski as opposed to Judge Schroeder. (See Dkt. 118 at 8-13). Moreover, the evidence presented at the hearing on November 14, 2019, does not support Defendant's contentions, and instead established that Justice Michalski was fully informed as to the circumstances surrounding the search warrant application—including the fact that law enforcement was interested in Defendant's alleged firearms trafficking along with alleged drug trafficking.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to suppress the evidence seized upon execution of the search warrant on May 18, 2018, at 89 Parkridge Avenue in Buffalo, New York (Dkt. 64), is denied.    The R&R (Dkt. 92) is modified to conform to the instant Decision and Order.    *See United States v. Peldomo*, No. 10-CR-0069 RRM ALC, 2010 WL 5071489, at *1 (E.D.N.Y. Dec. 7, 2010) ("When reviewing a magistrate's Report and Recommendation, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." (quotation omitted)).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:      January 24, 2020
            Rochester, New York