IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.                                                    18-CR-126-W

TITUS THOMPSON,

      Defendant.
_____

## GOVERNMENT'S RESPONSE TO DEFENDANT TITUS THOMPSON'S PRE-TRIAL MOTIONS

THE UNITED STATES OF AMERICA, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, Emmanuel Ulubiyo and Charles J. Volkert, Jr., Assistant United States Attorneys, of counsel, hereby files its response to defendant TITUS THOMPSON's Pre-Trial Motions (Dkt 252).

### I. INTRODUCTION

The defendant, TITUS THOMPSON, is charged at Counts 1-5 of the Second Superseding Indictment. The defendant is alleged to have participated in a firearms trafficking conspiracy, to be a felon not to possess firearms, to have used a residence for drug-trafficking, and for possessing firearms in furtherance of drug-trafficking. A final pre-trial conference is scheduled for February 21, 2020. Trial is scheduled to begin February 24, 2020.

The defendant argues his right to a Speedy Trial under 18 U.S.C. § 3161 was violated. He moves to sever his case from defendants Turner and Cooper. In the alternative, he asks

that Counts 1-3 be severed from Counts 4 and 5.  He raises an issue as to the admissibility of co-conspirator statements, challenges whether an ATF agent can testify as an expert, moves for a pre-witness determination as to the admissibility of "extrinsic offenses or other acts of misconduct," and asks that certain records be excluded.  The government responds below.

## II.   ARGUMENT

**Speedy Trial**

In his first motion, the defendant seeks to dismiss the charges due to an alleged speedy trial violation.  See Dkt 252, ¶ 1.  He cites the 70-day rule of 18 U.S.C. § 3161(c)(1).  The defendant, however, does not present any argumentation or citation to the docket or legal authority as to how the 70-day limit was surpassed.

A review of the docket shows a criminal complaint was filed on May 18, 2018.  Dkt 1.  He was indicted on June 14, 2018.  Dkt 2.  On June 21, 2018, he was arraigned and time was excluded until August 10, 2018.  Dkt 5.  On August 10, 2018, he made a motion for discovery.  Dkt 8.  The motion was decided on August 31, 2018.  On September 5, 2018, the government made a motion to set a trial date, Dkt 11; on September 11, 2018, the Court set a trial schedule and noted the "Speedy trial clock is running."  Dkt 14.  On October 3, 2018, the government filed some trial documents.  See Dkts 17-23.  On October 4, 2018, the defendant filed a motion to modify his conditions of release, Dkt 25, which the Court scheduled for October 11, 2018, Dkt 26.  On October 11, 2018, a superseding indictment was issued.  Dkt 31.  Trial was cancelled and his bail motion denied on October 12, 2018. Dkt 34.  Giving the defendant the best possible outcome in the above procedures, it is arguable (based on a reading of the docket

alone) that the Speedy Trial Clock was running from September 1, 2018 (the day after his motion was denied) until October 4, 2018 (the day he filed a bail motion), which is 33 days, not including October 4th.

The defendant was arraigned on the superseding indictment on October 17, 2018. See Runner between Dkt 36 and 37. Eight codefendants were arraigned on October 24, 2018, and time was excluded. Runner between Dkt 38 and 39. From that time until the trial date of February 24, 2020, time appears excludable based on the motions practice of the defendant and his codefendants. See e.g. United States v. Contreras, 216 F.Supp.3d 299, 303 (W.D.N.Y. 2016)("The Speedy Trial Act 'imposes a unitary time clock on all co-defendants joined for trial' … As a result, 'delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants.'") (citations omitted). On September 25, 2019, the Court noted time was excluded from that date until the trial date of February 24, 2020. Dkt 120.

According to the above and a review of the docket it appears that (construing all calculations in the defendant's favor) there are weeks remaining on the Speedy Trial Clock. Since the defense has not provided any specific argumentation or calculation of the numbers, the government would respectfully request the opportunity to respond to any arguments set forth after this filing.

**Separate Trials**

The defendant requests severance, arguing that there may be hearsay evidence that unfairly prejudices him, see Dkt 252, p. 2, and that a joint trial may preclude him from excluding intrinsic evidence sought to be admitted. Id. at 3.  He argues that a joint trial will hinder his right to remain silent and confront witnesses.[1]  Alternatively, he asks to sever Counts 1-3 from Counts 4-5, arguing the firearms offenses are not of the "same or similar character" of the drug offenses under Fed.R.Crim.P. 8(a).  He should be denied relief.

The defendant does not offer a compelling argument for severance.  This Court has already denied defendant Cooper's motion for severance. See Dkt 232, Text Order.  The defendant does not explain how that ruling should not apply to his motion.

Joint trials "play a vital role in the criminal justice system." Richardson v. Marsh, 481 U.S. 200, 209 (1987).  Joint trials also "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused to come to trial." Bruton v. United States, 391 U.S. 123, 134 (1968).  In Marsh, the Supreme Court elaborated upon the efficacy of joint trials, as follows:

> It would impair both the efficacy and the fairness of the criminal justice system to require […] that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand.  Joint trials generally serve the interests of justice by avoiding

---

[1] He cites De Luna v. United States, 308 F.2d 140 (5th Cir. 1962), but the rationale of that case has been thoroughly called into question. See e.g. United States v. Pirro, 76 F.Supp.2d 478, 486-87 (S.D.N.Y. 1999) (citing cases); see also United States v. Marquez, 449 F.2d 89, 93 (2d Cir. 1971) (declining to address the district court's denial of a DeLuna claim where the defendant failed to "show sufficient inconsistency in his defense to justify a severance.").

      inconsistent verdicts and enabling more accurate assessment of relative culpability – advantages which sometimes operate to a defendant's benefit.

481 U.S. at 210.

      Federal Rule of Criminal Procedure 8(a) permits joinder of offenses against a single defendant when they are (1) based on the same act or transaction, (2) based on two or more acts or transactions connected together or constituting part of a common scheme or plan, or (3) of the same or similar character. United States v. Turoff, 853 F.2d 1037, 1042 (2d Cir. 1988). Joinder is proper where the same evidence may be used to prove each count. United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991).

      Federal Rule of Criminal Procedure Rule 8(b) permits joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Moreover, the defendants "may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). A non-frivolous conspiracy charge is sufficient to support joinder of the defendants. United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1990). Even if a defendant is not alleged to be part of a single conspiracy or RICO enterprise, joinder is proper if a count with which the defendant is charged is integrally related to a conspiracy or RICO charge. United States v. Cervone, 907 F.2d 332, 341 (2d Cir. 1990).

      Claims of prejudicial joinder are dealt with in Rule 14 of the Federal Rules of Criminal Procedure. Severance motions should be granted only where joinder presents a serious risk that a specific trial right of a defendant would be compromised or when the jury would be

5

prevented from making a reliable judgment. Zafiro v. United States, 506 U.S. 534 (1993); accord United States v. Scarpa, 913 F.2d 993, 1015 (2d Cir. 1990) ("A defendant seeking to overturn a denial of a severance motion [. . .] must show that he was 'so severely prejudiced by a joint trial that it . . . in effect den[ied] him a fair trial . . ., not that he might have had a better chance for acquittal at a separate trial.'") (citations omitted). "When defendants are properly joined under Rule 8, a severance, pursuant to Fed R.Crim. P. 14, should only be granted if there is a serious risk that a joint trial would either compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998). Unless there has been misjoinder, a defendant must show that prejudice from a joint trial "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." Id. Indeed, the type of prejudice that warrants severance must be "so substantial as to amount to a 'miscarriage of justice.'" See Cervone, 907 F.2d at 341. Furthermore, the trial court, in multi-defendant cases such as this, always has at its disposal the ability to issue limiting instructions to "safeguard against the possibility of 'spillover' prejudice" by explaining to the jury that the evidence should be analyzed separately, as to each defendant. See Cervone, 907 F.2d at 342; see also Zafiro v. United States, 506 U.S. 534, 539 (1993) (rather than severing a case, a district court may take "less drastic measures, such as limiting instructions, [which] often will suffice to cure any risk of prejudice.").

Here, the defendant does not actually cite any specific hearsay statements or extrinsic evidence that could unfairly prejudice him and could not be cured by a limiting instruction. The government is not aware of any issues that could arise implicating Bruton v. United

6

States, 391 U.S. 123 (1968), because the co-defendants, while possibly implicating themselves, do not implicate the defendant. Given the strong preference for joint trials in conspiracy cases, as noted in the case law above, the defendant's general motion for severance should be denied.

The defendant also seeks to sever his firearms-trafficking counts from his narcotics charges. Dkt 252, p. 5. The defendant argues he "may" present separate defenses on the various charges. Id. Evaluating a similar assertion, the Second Circuit has noted that "a mere unexplained assertion of a desire to testify on only one count is not enough to require severance." United States v. Sampson, 385 F.3d 183, 191 (2d Cir. 2004) (citing United States v. Werner, 620 F.2d 922, 928 (2d Cir. 1980)). The defendant does not expound upon his general assertion.

The defendant is charged with participating in a conspiracy that trafficked firearms to Buffalo, with possessing those firearms as a prohibited person, and with maintaining some of those trafficked firearms in a residence that also contained drug-trafficking evidence, to include a kilo press. The drug evidence and firearms were discovered during a search warrant at the residence. The offenses are inextricably intertwined with one another. The drug evidence also helps explain his possession of firearms. And his possession of firearms to, *inter alia*, protect a stash house furthers the drug-trafficking crime. See United States v. Lewter, 402 F.3d 319, 321-22 (2d Cir. 2005) (discussing firearms and drug-trafficking in the context of a 18 U.S.C. § 924 offense).

In United States v. Page, 657 F.3d 126 (2d Cir. 2011), the Court found the district court's refusal to sever a 18 U.S.C. § 922(g)(1) charge from the defendant's narcotics counts was not improper. The Court noted there was a "sufficient logical connection" "between the narcotics count and the gun count. Id. at 130. The gun and drugs were found in the same room during a search. Id. The Court also found that separate trials would have required much of the same evidence, noting that "to prove Page's knowing possession of the gun, the government would have been entitled to offer evidence of his narcotics trafficking." Id. (citation omitted). And at the narcotics trial, the government would have been permitted to enter the gun as a "tool" of the drug trade. Id. (citation omitted). Where evidence is interconnected, the interests of judicial efficiency were also served by trying counts together. Id. (citing United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991)). The Court also properly gave a limiting instruction as it related to evidence of the defendant's prior conviction.[2] Id. And the defendant did not show substantial prejudice requiring severance. Id. at 131.

Based on all of the above, the defendant's motion for severance of the trial or counts should be denied.

---

[2] The Court indicated it usually bifurcates Section 922(g)(1) trials. The Page Court noted that bifurcation is not required, but also indicated its opinion should not be construed as a "denunciation of the practice of bifurcated in a felon-in-possession charge from other charges in a single multi-charge-trial …" id. at 132.

### Co-Conspirator Statements

The defendant requests a hearing to determine the admissibility of any co-conspirator statements prior to the witness's testimony. Dkt 252, p. 6. The government understands its obligations under Fed.R.Evid. 801(d)(2)(E) and Bourjaily v. United States, 483 U.S. 171 (1987). Many of the government's witnesses were members of the conspiracy and much of their testimony will involve co-conspirator statements.

In United States v. Zhao Wu Chen, 322 Fed.Appx. 43, 46-47 (2d Cir. 2009), the Court outlined the applicable law:

> Federal Rule of Evidence 801(d)(2)(E) designates as non-hearsay "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." "Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule." Bourjaily v. United States, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). "There must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy." Id. (internal quotation marks omitted). The offering party must prove that these facts are established by a preponderance of the evidence. Id. "[A] court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." Id. at 181, 107 S.Ct. 2775. However, "there must be some independent corroborating evidence of the defendant's participation in the conspiracy." United States v. Gigante, 166 F.3d 75, 82 (2d Cir.1999).

The government is prepared to proceed in whatever fashion the Court determines best to ensure the proper procedures for the admission of co-conspirator statements is followed. The government can make a proffer prior to the start of trial, prior to the day's testimony, prior to a witness's individual testimony, or however the Court determines is appropriate.

**Expert Witness**

The defendant requests a pre-trial ruling on the admissibility of the government's expert law enforcement witness, ATF SA William Farnham, to the extent he will testify that the ammunition and firearms "as defined under the law" "traveled in and affected interstate commerce prior to being recovered in the State of New York." Dkt 252, p. 9. The defendant challenges the reliability and relevancy of the proposed expert's findings. See Dkt 252, p. 10.

SA Farham was identified as a government expert who is a certified interstate nexus expert for the ATF. See Dkt 196. He has examined thousands of firearms and rounds of ammunition in his career. Id. He identified firearms and ammunition in this case that are defined so under the law and that must have traveled in interstate commerce. Id.; See ATF Report of Investigation 765065-18-0102, Report No. 39 dated 1/24/20.

> Federal Rule of Evidence 702 states:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and,
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

"Rule 702 imposes on the trial judge an obligation to determine whether the expert's specialized knowledge will assist the trier of fact, *i.e.*, will be not only relevant, but reliable."

United States v. Romano, 794 F.3d 317, 330 (2d Cir. 2015) (citations omitted).  The Rule 702 inquiry is a "flexible one" and the district court may consider such factors as "the theory's testability, the extent to which it has been subjected to peer review and publication, the extent to which a technique is subject to the standards controlling the technique's operation, the known potential error rate, and the degree of acceptance within the relevant scientific community." Id. (citing Daubert, 509 U.S. at 593-594).  This "gatekeeping inquiry must be tied to the facts of a particular case." Id. (citations omitted).  "Whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." Id. at 331 (citations omitted).

When analyzing an expert's qualifications, the Court considers the issue "with 'liberality and feasibility' and avoids subjecting the witness to 'an overly narrow test of his qualifications,' nevertheless, the expert must 'stay within the reasonable confines of his subject area, and cannot render expert opinion on an entirely different field or discipline.'" Dreyer v. Ryder Automotive Carrier Group, Inc., 367 F.Supp.2d 413, 425 (2d Cir. 2005) (citations omitted).  Additionally, "[i]f the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." In re Zyprexa Products Liability Litigation, 489 F.Supp.2d 230, 282 (E.D.N.Y. 2007) (citing Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 80 (2d Cir. 1997) (expert witness qualified when experience, knowledge, or training related to general area, not to specific question before trier of fact)).

11

The Court is not required to hold a Daubert hearing upon request.  See United States v. Williams, 506 F.3d 151, 161 (2d Cir. 2007) ("While the gatekeeping function requires the district court to ascertain the reliability of Kuehner's methodology, it does not necessarily require that a separate [Daubert] hearing be held in order to do so.") (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999) (district courts possess "latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability.").  A hearing is often unnecessary "if, at the time the expert testimony is presented to the jury, a sufficient basis for allowing the testimony is on the record." Williams, at 161.

The defendant does not make any specific challenges to SA Farnham's credentials. His arguments appear more geared toward an objection of any expert testimony from an ATF agent on these issues.  Testimony that a firearm or ammunition "was manufactured out of state is generally sufficient to meet the interstate commerce element." United States v. Jones, 16 F.3d 487, 491 (2d Cir. 1994).[3] Similar challenges the defendant makes have been denied by other courts and ATF agents often testify as experts to establish the interstate nexus in firearms cases. See United States v. Cormier, 468 F.3d 63, 72-73 (1st Cir. 2006); United States v. Miller, 59 Fed.Appx. 81, 82-83 (6th Cir. 2003); United States v. Campbell, 2009 WL 595977 (E.D.TN. Mar. 6, 2009); United States v. Williams, 93 Fed.Appx 951, 955 (7th Cir. 2004); United States v. Wallace, 889 F.2d 580, 584 (5th Cir. 1989); United States v. Stewart,

---

[3] But a simple statement from an agent that handguns are not presently manufactured in New York is insufficient because guns were at one time manufactured in New York. Id.

100 Fed.Appx. 30, 31-32 (2d Cir. 2004) (noting that ATF agent testified as to the interstate nexus of the firearm); see also United States v. Chin, 910 F.Supp. 889, 893 (E.D.N.Y. 1995).

In light of the above, and given the lack of a specified argument, the defendant's motion for a Daubert hearing should be denied.

**Extrinsic Evidence**

The defendant requests the Court instruct the government witnesses not to mention extrinsic offenses or other acts of misconduct alleged to have been committed by the defendant until a hearing can be held outside the presence of the jury. Dkt 252, p. 10. The defendant does not cite to any specific acts even though a wealth of discovery and litigation has occurred in this case. The government only intends to offer admissible evidence. If timely objections or specific issues are raised by the defense, the government will be in a better position to respond. The Court may determine what procedure is required under the circumstances prior to the introduction of evidence. See Generally United States v. McSherry, 226 F.3d 153, 155-56 (2d Cir. 2000) (in the exercise of supervisory powers, guided by considerations of justice and under appropriate circumstances, a federal court may formulate procedural rules not specifically required by the Constitution or Congress). The defendant's request should be denied. If he clarifies or specifies his motion, the government would request an opportunity to respond.

**Government Records**

The defendant moves to preclude the government from admitting Buffalo Police Reports, the search warrant for 89 Parkridge, as well as all of the images taken during the search warrant that do not depict firearms alleged in the indictment. Dkt 252, p. 12. The defendant cites no law and his motion consists of one sentence. He does not state under what grounds the evidence should be excluded. To the extent the evidence is admissible under the Rules of Evidence, the government opposes the motion.

Regarding the pictures from the search warrant, the defendant does not explain in any way why only images of firearms in the house should be admitted. The pictures provide more evidence than just firearms. They help explain location, proximity, scale, possession, and condition of the apartment. Many issues surrounding the defendant's unlawful possession of the contraband are in dispute. The images also display drug paraphernalia and the defendant is charged with narcotics offenses. He is charged with maintaining a drug-involved premises. Depictions of the premises are highly relevant. Since the defendant offers no specifics or legal theory as to why the evidence should be excluded, his motion should be denied. His motion should also be denied to the extent the evidence is otherwise relevant, not unfairly prejudicial, and admissible.

### III.   CONCLUSION

**WHEREFORE**, for the foregoing reasons, the government respectfully requests that this Court make findings consistent with the above arguments.

DATED:    Buffalo, New York, February 19, 2020.

JAMES P. KENNEDY, JR.
United States Attorney

BY:   s/EMMANUEL ULUBIYO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5713
Emmanuel.Ulubiyo@usdoj.gov

BY:   s/CHARLES J. VOLKERT, JR.
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5869
Charles.Volkert@usdoj.gov